UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHRISTELLE NUNNERY | CIVIL ACTION |
| VERSUS | NO. 16-14772 |
| SOCIAL SECURITY ADMINISTRATION | SECTION "E" (3) |

REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying her claim for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"). She also appeals the denial of her application for disabled widow's benefits. The matter has been fully briefed on cross-motions for summary judgment and is ripe for review. For the following reasons, IT IS RECOMMENDED that plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

I. BACKGROUND

Plaintiff filed an application for DIB and SSI on January 8, 2014, and an application for disabled widow's benefits on March 7, 2014, alleging a disability onset date of May 31, 2013. (Adm. Rec. at 137-52). Plaintiff alleged disability due to arthritis, back pain, obesity, diabetes Type II, and depression. (*Id.* at 188). Plaintiff, born on May 4, 1963, was 50 years old on the date on which she alleged disability and 51 years old at the time of the final administrative decision. (*Id.* at 1184). Plaintiff has two years of college. (*Id.* at 189). Plaintiff has past work experience as an LPN/Scheduler and a private nurse/sitter. (*Id.*).

Defendant initially denied plaintiff's applications on May 28, 2014. (*Id.* at 46-48). Plaintiff sought an administrative hearing, which defendant held on January 12, 2015. (*Id.* at 27-45).

Plaintiff and a vocational expert ("VE"), Dr. Crystal Younger, testified at the hearing.

On February 12, 2015, the ALJ issued a decision in which she found that plaintiff has not been disabled since May 31, 2013. (*Id.* at 11-22). In the decision, the ALJ concluded that plaintiff has the severe impairments of lumbago, obesity, diabetes mellitus, and degenerative joint disease of the right shoulder. (*Id.* at 14). The ALJ held that plaintiff does not have an impairment or a combination of impairments that meets or medically equals a listed impairment under the regulations. (*Id.* at 15). The ALJ found that plaintiff retains the residual functional capacity ("RFC") to perform light work activity as defined in 20 C.F.R. § 404.1567(b) except she is precluded from climbing ladders, ropes, and scaffolds, and is limited to occasional stooping, kneeling, crouching, crawling, and overhead reaching with the right-dominant arm. (*Id.*). The ALJ concluded that plaintiff can perform her past relevant work as an LPN/Scheduler and a private nurse/sitter. (*Id.* at 20). The ALJ thus denied plaintiff DIB. (*Id.* at 21-22).

Plaintiff asked the Appeals Council ("AC") to review the ALJ's conclusion that she is not disabled. (*Id.* at 7). On July 18, 2016, the Appeals Council denied plaintiff's request. (*Id.* at 1-6). Plaintiff then timely filed this civil action.

## II.     STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence,

2

this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey,* 230 F.3d at 135. Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

### III.     ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered disabled only if his physical or mental impairment is so severe that he is unable to do not only his previous work, but can not, considering his age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which he lives, whether a specific job vacancy exists, or whether he would be hired if he applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901t-416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past

4

work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 238 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999)). If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step V also requires the Commissioner to use the medical-vocational guidelines to make her disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

## IV.  ISSUES ON APPEAL

There are three issues on appeal:

(1)  Whether substantial evidence supports the ALJ's conclusion that plaintiff's depression is not severe.

(2)  Whether substantial evidence supports the ALJ's credibility determination.

(3)  Whether the ALJ erred when she accorded great weight to the state-agency single decision maker.

## V.  ANALYSIS

**1.  Whether substantial evidence supports the ALJ's conclusion that plaintiff's**

**depression is not severe.**

The ALJ considered the record and evidence as a whole and concluded that plaintiff does not have a severe mental impairment. (Adm. Rec. at 14). In making this determination, the ALJ properly analyzed the severity of plaintiff's mental impairment under the "special technique" for mental impairments found in defendant's regulations. (*Id.* at 14-15); s*ee* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1) (findings of "none" or "mild" in the four functional areas generally equate to non-severe impairment). The ALJ determined that plaintiff has: no limitations in activities of daily living; no limitations in social functioning: mild limitations in concentration, persistence, and pace: and no episodes of decompensation. (*Id.* at 14-15). Having reviewed the record, the Court finds that substantial evidence supports the ALJ's decision.

Records from Ochsner Foundation Hospital from June 2010 through March 2012 show normal mental findings including intact memory, a euthymic mood, goal-directed and logical thought processes, and none of the following: auditory hallucinations, compulsions, delusions, homicidal thoughts, illusions, obsessions, phobias, suicidal thoughts, violence, or visual hallucinations. (*Id.* at 285-87, 300-03, 308-11). Mental status examinations at Jefferson Parish Human Services Authority ("JPHSA") in June and July 2014 revealed a euthymic mood, normal thought process, good intellect, good insight, good judgment, and intact memory, and plaintiff reported that her mood was improved and that she slept well at night. (*Id.* at 19, 415, 416). A consultative psychological examination performed by Carlos Reinoso, Ph.D., in May 2014, revealed that plaintiff's mood and affect were appropriate with no signs of gross mood dysfunction; she had no impaired thought; no problems with attention, impulsivity, or hyperactivity; she maintained good eye contact; she established rapport easily; she put forth

adequate effort and motivation; and she demonstrated normal concentration and adequate persistence and pace of response. (*Id.* at 405). Reinoso concluded that "[f]rom a psychological standpoint, [plaintiff] should not have difficulty in relating to co-workers or superiors . . . [or] handling work pressures in a work setting. [Plaintiff] can understand, carry out, and remember complex instructions." (*Id.* at 405).

Lester Barnett, Ph.D., a state agency medical consultant, also reviewed the available record in May 2014 and concluded that plaintiff does not have a severe mental impairment. (*Id.* at 66-67). She was not taking any medication for depression and had no psychological difficulty at the field office interview. (*Id.* at 67). Barnett found no significant functional limitations due to depression. (*Id.*). Proof of a severe impairment must be corroborated, at least in part, by objective medical evidence. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). The ALJ specifically considered this evidence and gave great weight to Barnett's opinion, which the Court finds is consistent with the evidence from the examinations of record. (*Id.* at 19-20). Thus, the ALJ properly found that plaintiff's alleged mental impairment is not severe. (*Id.* at 14).

Plaintiff argues that the ALJ erred in her consideration of records from JPHSA because physicians there diagnosed her with a moderate impairment due to a major depressive disorder. (*Id.* at 416, 422, 425). However, this diagnosis is not supported by the examination notes from JPHSA. Records indicate that plaintiff exhibited a euthymic mood, appropriate affect, unremarkable perception, logical thought process, good judgment, and intact memory. (*Id.* at 415-16). A diagnosis in and of itself does not establish a severe impairment. *See Johnson v. Sullivan*, 894 F.2d 683, 685 (5th Cir. 1990) (holding that a diagnosis is only part of the evidence that an ALJ considers); *see also Dise v. Colvin*, 630 Fed. Appx. 322, 326 (5th Cir. 2015) ("Dise's depression

7

diagnosis is not, itself, a functional limitation.").

Plaintiff also contends that the ALJ erred when he failed to cite to June 2013 to October 2014 treatment records from LSU Interim Public Hospital. On the contrary, however, the ALJ did consider these records concerning plaintiff's physical impairments. (*Id.* at 17-18). Those records reveal that plaintiff sought treatment at LSU Interim Public Hospital due to physical complaints rather than mental treatment. (*Id.* at 433-93). Thus, the records from LSU Interim Public Hospital do not support plaintiff's allegation of a severe mental impairment. The records consistently show that plaintiff was alert and oriented in all spheres; she did not exhibit neurological deficits; and she did not have motor or sensory deficits. (*Id.* at 435-36, 442-43, 445, 451, 461, 478). This evidence only supports the ALJ's finding of non-severity.

Plaintiff maintains that the ALJ erred when he gave great weight to the opinion of the consultative psychologist, Dr. Reinoso, and contends that the ALJ executed a "pick-and-choose" method when weighing the medical evidence. (*Id.* at 18). There is no evidence in the record, however, that the ALJ gave such great weight to Reinoso's opinion. (*Id.* at 18). As discussed above, the evidence that plaintiff cites to support her claim of disability are merely diagnoses unsupported by the objective medical findings. Plaintiff contends that Reinoso's opinion is internally inconsistent due to his notation that plaintiff exhibited limited immediate memory, yet he still opined that that plaintiff can understand, carry out, and remember complex instructions. (*Id.* at 405). Reinoso concluded that plaintiff's mental status was normal given that her thought processes were appropriate; her ability to identify current year, day, and month exhibited proper orientation; her ability to work and accomplish daily living routines was normal; and she did not exhibit substantial cognitive deficits. (*Id.* at 405). To conclude that plaintiff can understand, carry out, and

8

remember complex instructions, Reinoso considered his positive mental findings in addition to plaintiff's current part-time work as a "home health sitter." (*Id.* at 404).

Plaintiff maintains that her subjective pain "may" or "could" be exacerbated by her alleged moderate depression and feelings of worthlessness. [Doc. #20-1 at p. 7]. However, she fails to cite objective medical evidence to support her argument. It is well-established that proof of a severe impairment must be corroborated, at least in part, by objective medical evidence. *Falco*, 24 F.3d at 163.

Plaintiff cites to a Global Assessment of Functioning ("GAF") score of 60 as support for her allegations. The GAF scale ranges from 0-100, with 60 meaning moderate difficulty in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders ("DSM") IV-TR, p. 34 (4th ed. 2000). However, the DSM-5 removed the GAF scale due to its "conceptual lack of clarity." DSM-5, p. 16 (5th ed. 2013). In addition, the GAF score is simply a snapshot in time and does not outweigh the opinions of the Reinoso and Barnett. (Adm. Rec. at 66-67, 404-405).

Essentially, plaintiff asks the Court to re-weigh the evidence differently than the ALJ, something this Court can not do. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2001). Rather, this Court's role is to determine only whether the ALJ's decision is supported by substantial evidence. *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Here, the Court finds that there is substantial, objective medical evidence to support the ALJ's findings in the form of normal exams, physician's opinions, and plaintiff's ability to continue to work part-time.

**2.     Whether substantial evidence supports the ALJ's credibility determination.**

It is well-established that "[i]t is within the ALJ's discretion to determine the disabling

nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (citations omitted). While the ALJ's assessment must be made with sufficient specificity, it need not follow formalistic rules; rather the ALJ's evaluation must be viewed in full context. *See Falco*, 27 F.3d at 163-64. Contrary to plaintiff's contention, the ALJ properly considered the relevant factors for evaluating a claimant's symptoms. (Adm. Rec. at 8); *see* 20 C.F.R. §§ 404.1529, 416.929.

The ALJ considered the lack of objective medical evidence supporting plaintiff's allegations of disability. (Adm. Rec. at 17-19). The Court finds that the record consistently reflects normal range of motion in plaintiff's back and extremities, full muscle strength and tone throughout, no swelling, intact sensation, normal gait and station, and negative straight-leg raise tests. (*Id.* at 17-19, 360-61, 367, 382, 392). She ambulated without support and could walk on her heels and toes and squat halfway down and rise without support. (*Id.* at 360). She had no motor or sensory deficit. (*Id.* at 367). The Fifth Circuit often holds that a claimant's subjective complaints must be corroborated, at least in part, by objective evidence. *Wren v. Sullivan*, 925 F.2d 123, 129 (5th Cir. 1991). This evidence does not support plaintiff's argument.

Plaintiff also takes issue with the ALJ's findings that her daily activities were not consistent with her allegations of pain and disability. (*Id.* at 19). Plaintiff testified that she is able to wash dishes, make her bed, cook simple meals, shop "here and there," and care for her mother. (*Id.* at 16, 33-35). She also reported to a physician at Internal Medicine Associates that she "performs all activities of daily living including driving." (*Id.* at 359). Moreover, plaintiff continues to work part-time (22 hours per week for over a year) as a licensed practical nurse, which is performed at a medium exertional level, and at the time of the hearing, was in the process of getting her license

reinstated. (*Id.* at 16, 30-32, 41). It is appropriate for the Court to consider daily activities when deciding the claimant's disability status. *Leggett v. Chater*, 67 F.3d 558, 565, n. 12 (5th Cir. 1995). Substantial evidence supports the ALJ's finding that plaintiff's reports of subjective pain are inconsistent with her daily activities.

Plaintiff argues that the ALJ ignored key findings in the record such as a right shoulder x-ray showing moderate osteoarthritis. (*Id.* at 19, 387-88). The ALJ, however, specifically considered this evidence and accounted for any resulting limitations by restricting plaintiff to no more than occasional overhead reaching with the right arm. (*Id.* at 15). Further limitations were not warranted given, as noted above, the evidence that plaintiff has full ranges of motion and full muscle strength. Once again, plaintiff asks the Court to re-weigh the evidence, which this Court can not do. *Carey*, 230 F.3d at 135.

Plaintiff asks the Court to shift the burden to the Commissioner to show why her chronic left heel pain and moderate osteoarthritis of the right shoulder would not further limit her beyond light work. Plaintiff's statements are mere speculation as she fails to identify objective medical evidence that shows work-related limitations due to heel pain and osteoarthritis of the shoulder. As noted above, physical examinations revealed mostly normal findings, including a normal gait, which contradicts plaintiff's complaints of disabling heel pain. As noted, a claimant's subjective complaints must be corroborated, at least in part, by objective evidence. *Wren*, 925 F.2d at 129.

Plaintiff also contends that the ALJ improperly discounted the third-party Function Report completed by her mother. However, the ALJ credited the opinion to the extent it was consistent with the objective medical evidence. (*Id.* at 20). In fact, plaintiff's mother primarily revealed plaintiff's difficulties with overhead reaching, which, again, the ALJ accounted for in her RFC

assessment. (*Id.* at 236). To the extent that plaintiff submits that her mother's report should take precedence over the objective evidence, her argument fails – subjective evidence can not take precedence over objective evidence. *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

The Court is "not well positioned to second-guess th[e] credibility determination so long as the ALJ's ultimate finding was supported by substantial evidence." *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016). The Court finds that here, the ALJ's conclusion is well supported by substantial, objective medical evidence.

> 3. **Whether the ALJ erred when she accorded great weight to the state-agency single decision maker.**

In May 2014, a Single Decision Maker ("SDM") opined that plaintiff was limited to light work with some postural limitations. (Ad. Rec. at 19-20, 56-57, 68-70, 80-82). An SDM is a non-medical professional that assumes primary responsibility for processing a claimant's application for disability, including the claimant's initial disability determination. *See* 20 C.F.R. 404.906(a). As stated by plaintiff, an ALJ is not to accord the opinions of a SDM any weight when rendering an opinion. *See* POMS DI 24510.050C. Plaintiff incorrectly states that the ALJ accorded great weight to the SDM's opinion. To the contrary, the ALJ simply noted that this opinion was "consistent with the medical evidence of record." (Adm. Rec. at 20). Any suggestion that the ALJ accorded the opinion any special deference or weight is not apparent in the text of the ALJ's decision. Indeed, in the very sentence before the ALJ addresses the SDM's opinion, the ALJ specifically accorded "great weight" to the opinion of the state agency psychological consultant. (*Id.* at 19). Had she wanted to give great weight to the opinion of the SDM, the ALJ certainly knew how to say so – and he did not.

Plaintiff contends that the record is somehow deficient because no consultative examiner

12

or medical consultant issued an opinion as to plaintiff's physical RFC. However, the Fifth Circuit has held:

> The absence of such a statement, however, does not, in itself, make the record incomplete. In a situation such as the present one, where no medical statement has been provided, our inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record.

*Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). Here, as described above, physical examinations revealed full ranges of motion, full muscle strength and tone, and normal gait, and plaintiff remained able to engage in normal daily activities, including working part-time 22 hours per week as a nurse. The Court concludes that the ALJ's restrictive RFC for light work is supported by substantial evidence.

## VI. CONCLUSION

Accordingly,

**IT IS RECOMMENDED** that plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

## NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs.*

*Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 14th day of August, 2017.

                                                       */s/ Daniel E. Knowles, III*
                                            **DANIEL E. KNOWLES, III**
                                            **UNITED STATES MAGISTRATE JUDGE**